**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MILE PEJCIC, | |
| Plaintiff, | |
| v. | Civil Action No. 19-cv-02437 (APM) |
| ANDREA M. GACKI, DIRECTOR OF THE OFFICE OF FOREIGN ASSESTS CONTROL, in her official capacity; and THE OFFICE OF FOREIGN ASSETS CONTROL, | |
| Defendants. | |

**CONSOLIDATED REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND**
**OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

    A.   Plaintiff's Unreasonable Delay Claim Fails ........................................................ 2

       1.   Plaintiff's Claim Is Moot ............................................................................ 2

       2.   Plaintiff's Claim Is Not Capable Of Repetition Yet Evading Review ......... 6

       3.   OFAC's Decision Was Not Unreasonably Delayed .................................. 8

    B.   OFAC's Denial Of Plaintiff's Delisting Petition Resulted From Reasoned
       Decision-making ......................................................................................... 15

       1.   OFAC Carefully Considered The Evidence Before The Agency And Articulated A
          Rational Connection Between The Evidence And Its Conclusion ............................ 16

       2.   OFAC Appropriately Considered Information About Plaintiff's Recent Conduct..... 21

    C.   The Relief Sought By Plaintiff Is Improper ..................................................... 25

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Action Alliance of Senior Citizens of Greater Phila. v. Heckler*,
  789 F.2d 931 (D.C. Cir. 1986) ..........................................................................3

*Am. Waterways Operator v. Wheeler*,
  427 F. Supp. 3d 95 (D.D.C. 2019) ...................................................................25

*Ashcroft v. Mattis*,
  431 U.S. 171 (1977) ........................................................................................3, 4

*Ass'n of Am. Med. Coll. v. United States*,
  217 F.3d 770 (9th Cir. 2000)................................................................................4

*Beyond Pesticides/Nat'l Coal. Against the Misuse of Pesticides v. Johnson*,
  407 F. Supp. 2d 38 (D.D.C. 2005) ...................................................................12

*Christopher P. v. Marcus*,
  915 F.2d 794 (2d Cir. 1990)................................................................................3

*Church of Scientology of Cal. v. United States*,
  506 U.S. 9 (1992)....................................................................................3, 6, 9

*Cigar Ass'n of Am. v. FDA*,
  436 F. Supp. 3d 70 (D.D.C. 2020) ...................................................................20

*Citizens Task Force on Timber Sales Review v. U.S. Forest Serv.*,
  894 F.2d 409, 1990 WL 4677 (9th Cir. Jan. 23, 1990) .................................3

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971).........................................................................................11

*Conservation Force v. Jewell*,
  733 F.3d 1200 (D.C. Cir. 2013) .........................................................................5

*Cooper v. United States*,
  285 F. Supp. 3d 210 (D.D.C. 2018) .................................................................19

*Ctr. for Sci. in the Pub. Interest v. FDA*,
  74 F. Supp. 3d 295 (D.D.C. 2014) ...................................................................10

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981).........................................................................................22

*Del Monte Fresh Produce Co. v. United States*,
  570 F.3d 316 (D.C. Cir. 2009) ...................................................................6, 7, 8

*DHS v. Regents of the Univ. of Cal.*,
   140 S. Ct. 1891 (2020) ............................................................................................20

*Epsilon Electronics, Inc. v. U.S. Department of the Treasury*,
   857 F.3d 913 (D.C. Cir. 2017) ................................................................................20

*Frizelle v. Slater*,
   111 F.3d 172 (D.C. Cir. 1997) ................................................................................19

*Fulmen Co. v. OFAC*,
   No. CV 18-2949 (RJL), 2020 WL 1536341 (D.D.C. Mar. 31, 2020)......................10

*Fulmen Co. v. OFAC*,
   No. 1:18-cv-2949 (D.D.C. Dec. 14, 2018) ..............................................................13

*Gerlich v. DOJ*,
   659 F. Supp. 2d 1 (D.D.C. 2009) .............................................................................3

*Grant v. Vilsack*,
   892 F. Supp. 2d 252 (D.D.C. 2012) .........................................................................7

*Harrison v. Office of Architect of Capitol*,
   68 F. Supp. 3d 174 (D.D.C. 2014)
   *aff'd*, 793 F.3d 119 (D.C. Cir. 2015).................................................................5, 23

*Hercules, Inc. v. EPA*,
   598 F.2d 91 (D.C. Cir. 1978) .................................................................................14

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010).............................................................................................18, 20

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   219 F. Supp. 2d 57 (D.D.C. 2002)
   *aff'd*, 333 F.3d 156 (D.C. Cir. 2003)...........................................................8, 14, 15

*In re Am. Rivers & Ida. Rivers United*,
   372 F.3d 413 (D.C. Cir. 2004) .................................................................................8

*In re Public Employees for Envtl. Responsibility*,
   957 F.3d 267 (D.C. Cir. 2020) ...............................................................................12

*Islamic Am. Relief Agency v. Gonzales*,
   477 F.3d 728 (D.C. Cir. 2007) .........................................................................15, 22

*Joumaa v. Mnuchin*,
   798 F. App'x 667 (D.C. Cir. 2020) .........................................................................16

*Joumaa v. Mnuchin*,
   No. CV 17-2780 (TJK), 2019 WL 1559453 (D.D.C. Apr. 20, 2019)................19, 21

*Kadi v. Geithner*,
  42 F. Supp. 3d 1 (D.D.C. 2012) ..................................................................................10, 11

*KindHearts for Charitable Humanitarian Development, Inc. v. Geithner*,
  647 F. Supp. 2d 857 (N.D. Ohio 2009) ............................................................................9

*Kokajko v. FERC*,
  837 F.2d 524 (1st Cir. 1988) .........................................................................................9, 10

*Liberty Fund, Inc. v. Chao*,
  394 F. Supp. 2d 105 (D.D.C. 2005) .................................................................................8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .........................................................................................................5

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
  336 F.3d 1094 (D.C. Cir. 2003) .......................................................................................10

*Mills v. Green*,
  159 U.S. 651 (1895) .........................................................................................................3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .....................................................................................................19, 21

*N. Air Cargo v. U.S. Postal Serv.*,
  674 F.3d 852 (D.C. Cir. 2012) .........................................................................................25

*N.Y. Reg'l Interconnect, Inc. v. FERC*,
  634 F.3d 581 (D.C. Cir. 2011) .........................................................................................5

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) .....................................................................................6, 7

*Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
  448 F. Supp. 2d 1 (D.D.C. 2006) ............................................................................11, 12, 13

*Palisades Gen. Hosp. Inc. v. Leavitt*,
  426 F.3d 400 (D.C. Cir. 2005) .........................................................................................25

*People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*,
  59 F. Supp. 3d 91 (D.D.C. 2014) .....................................................................................7

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
  344 U.S. 237 (1952) .........................................................................................................4

*Pub. Utilities Comm'n of Calif. v. FERC*,
  236 F.3d 708 (D.C. Cir. 2001) .........................................................................................6

*Rakhimov v. Gacki*,
   No. CV 19-2554 (JEB), 2020 WL 1911561 (D.D.C. Apr. 20, 2020),
   *appeal dismissed*, No. 20-5121, 2020 WL 4107145 (D.C. Cir. July 1, 2020) ............................ 23

*Regents of the Univ. of Cal.*,
   140 S. Ct. 1891 (2020) .......................................................................................................... 20

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
   442 F. Supp. 3d 53 (D.D.C. 2020) ......................................................................................... 8

*SecurityPoint Holdings, Inc. v. TSA*,
   836 F.3d 32 (D.C. Cir. 2016) ........................................................................................... 4, 16

*Simpson v. Young*,
   854 F.2d 1429 (D.C. Cir. 1988) ........................................................................................... 21

*Skalka v. Kelly*,
   246 F. Supp. 3d 147 (D.D.C. 2017) ....................................................................................... 8

*Spencer v. Kemna*,
   523 U.S. 1 (1998) .................................................................................................................... 3

*Stand Up for California! v. U.S. Dep't of Interior*,
   71 F. Supp. 3d 109 (D.D.C. 2014) ................................................................................. 14, 24

*Super Tire Eng'g Co. v. McCorkle*,
   416 U.S. 115 (1974) ................................................................................................................ 2

*Telecommunications Research & Action Center v. FCC ("TRAC")*,
   750 F.2d 70 (D.C. Cir. 1984) .................................................................................... 8, 10, 11

*TOMAC v. Norton*,
   193 F. Supp. 2d 182 (D.D.C. 2002)
   *aff'd sub. nom.*, 433 F.3d 852 (D.C. Cir. 2006) ............................................................ 11, 12

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) .......................................................................................................... 18

*U.S. Dep't of Interior*,
   71 F. Supp. 3d 109 (D.D.C. 2014) ................................................................................. 14, 24

*United States v. Chem. Found.*,
   272 U.S. 1 (1926) .................................................................................................................. 14

*United States v. McKeeve*,
   131 F.3d 1 (1st Cir. 1997) ......................................................................................... 22, 23, 24

*Weinstein v. Bradford*,
   423 U.S. 147 (1975) ................................................................................................................ 6

*Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*,
   750 F. Supp. 2d 150 (D.D.C. 2010) ............................................................................16

*Zevallos v. Obama*,
   10 F. Supp. 3d 111 (D.D.C. 2014) ...........................................................13, 14, 15, 19

*Zevallos v. Obama*,
   793 F.3d 106 (D.C. Cir. 2015) ...................................................................13, 22, 24

**Statutes**

5 U.S.C. § 706 ............................................................................................................11, 24

5 U.S.C. § 706(1) ................................................................................................................2

5 U.S.C. § 706(2)(A) .......................................................................................................24

21 U.S.C. § 1904(b)(2)-(3) .............................................................................................19

**Other Authorities**

31 C.F.R. § 501.807 .........................................................................................................24

Executive Order No. 13304..................................................................................2, 16, 21

Executive Order No. 13219...............................................................................................16

Executive Order No. 13671...............................................................................................17

## INTRODUCTION

Plaintiff Mile Pejcic asks this Court to overturn the well-reasoned decision of the Office of Foreign Assets Control ("OFAC"), made in the context of national security and foreign affairs, that Plaintiff's assets should remain blocked pursuant to the International Emergency Economic Powers Act ("IEEPA") and Executive Order No. ("EO") 13219, as amended by EO 13304. However, as explained in Defendants' motion for summary judgment, OFAC reasonably determined that Plaintiff has materially assisted, or provided financial or material support for, Radovan Karadzic, a designated person and convicted war criminal, and has actively obstructed or poses a risk of actively obstructing the Dayton Accords.  *See* Mem. in Supp. of Defs.' Mot. for Summ. J. at 16-21, ECF No. 8-1 ("Defs.' Mem.").  Defendants also explained that Plaintiff is not entitled to any relief for his claim that OFAC's decision on his delisting petition was unreasonably delayed, as OFAC's issuance of its denial decision mooted that claim, which in any event fails on the merits.  *Id.* at 11-16.

Plaintiff's response to Defendants' motion does not establish otherwise.  *See* Pl.'s Cross-Mot. for Summ. J. & Opp'n to Defs.' Mot. for Summ. J., ECF Nos. 24-25 ("Pl.'s Opp.").  First, Plaintiff maintains that he is entitled to declaratory relief on his unreasonable delay claim, and that his claim is not moot because such relief would guide future decision-making at the agency.  *Id.* at 25-29.  But declaratory relief as to Plaintiff's claim would not adjudicate any present rights of the parties and would therefore constitute an impermissible advisory opinion.  Further, and especially as there is no rule of reason to apply with respect to the timing of OFAC's adjudication of delisting petitions, Plaintiff cannot establish that any delay was unreasonable.  *See id.* at 18-25.

Second, Plaintiff claims that OFAC's denial decision is arbitrary and capricious, primarily because Karadzic has been arrested and so can no longer be assisted by Plaintiff.  *See id.* at 30-38. This argument, however, misapprehends the Executive Order that authorized Plaintiff's initial

designation.  EO 13304 by its terms permits OFAC to designate individuals based on past conduct, *see* EO 13304, § 1(a)(ii)(C)-(D), and Plaintiff has failed to demonstrate that the basis for his designation—including his prior assistance to Karadzic—was insufficient.  Nor has Plaintiff established that his removal from the List of Specially Designated Nationals and Blocked Persons ("SDN List") is warranted based on a change of circumstances, particularly given his recent conduct highlighted by the State Department in its foreign policy guidance.  While Plaintiff may disagree with OFAC's reliance on that information, *see* Pl.'s Opp. at 34-37, his disagreement casts no doubt on the reasonableness of the agency's decision.

Defendants' motion for summary judgment should therefore be granted, and Plaintiff's cross-motion should be denied.

## ARGUMENT

### A.    Plaintiff's Unreasonable Delay Claim Fails

#### 1.    Plaintiff's Claim Is Moot

Plaintiff maintains that OFAC unreasonably delayed its decision regarding his delisting petition pursuant to 5 U.S.C. § 706(1).  Pl.'s Opp. at 18-25.  As Defendants explained, however, that claim has been rendered moot by OFAC's issuance of its denial decision.  Defs.' Mem. at 11-13.  That Plaintiff seeks declaratory rather than injunctive relief, *see* Pl.'s Opp. at 26, does not compel a different conclusion.

Under longstanding Supreme Court precedent, for declaratory relief to be effective, and therefore not moot, the plaintiff must "still retain sufficient interests and injury as to justify the award of declaratory relief.  The question is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121-22 (1974) (citation omitted).  "It has long

been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law *which cannot affect the matter in issue in the case before it*.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)) (emphasis added).  For a declaratory judgment request to be effective, "there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of *present right* upon established facts."  *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam) (emphasis added, quotation omitted).

The Supreme Court has expressly warned against granting declaratory relief based on past actions that lack continuing effect.  In *Spencer v. Kemna*, the Court made very clear that "[w]e are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong."  523 U.S. 1, 18 (1998).  In direct contravention of *Spencer*, Plaintiff asks this Court to pronounce that the timing of OFAC's decision was "right or wrong," despite the fact that any alleged delay has "no demonstrable continuing effect" and instead "is now over, and cannot be undone."  *Id.* at 8; *see also Citizens Task Force on Timber Sales Review v. U.S. Forest Serv.*, 894 F.2d 409, 1990 WL 4677, at *2 (9th Cir. Jan. 23, 1990) (unpublished) (cautioning that declaratory judgments should not be used when they "lead to no practical resolution of a dispute before the court"); *Christopher P. v. Marcus*, 915 F.2d 794, 802 (2d Cir. 1990) ("A litigant may not use the declaratory judgment statute to secure judicial relief of moot questions."); *Action Alliance of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 943 n.15 (D.C. Cir. 1986) (finding claim for declaratory relief concerning "past delay" moot and stating that "harm caused by the past delay has been eradicated by the Secretary's approval of the outstanding regulations"); *Gerlich v. DOJ*, 659 F. Supp. 2d 1, 20 (D.D.C. 2009) (concluding that declaratory relief finding defendants' alleged past discrimination against job applicants unlawful "would not eliminate the

alleged effects of this discrimination" and "would amount to an advisory opinion of the type that Article III strictly prohibits").

Second, to the extent that Plaintiff contends that the requested declaratory relief would be effective because it would "allow [him] to have any future request for delisting decided without unreasonable delay," Pl.'s Opp. at 27, he is mistaken. As noted above, the declaration requested is a limited, retrospective one and would not be effective with respect to any hypothetical future petition filed by Plaintiff, nor with respect to OFAC's sanctions program generally. The circumstances that might render OFAC's adjudications "unreasonably delayed" are case-specific and would necessarily differ from the circumstances that might arise in a hypothetical future adjudication. *See Ashcroft*, 431 U.S. at 172; *see also Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246 (1952) ("[T]he declaratory judgment procedure will not be used to preempt and prejudice issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review."); *cf. Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770, 779-80 (9th Cir. 2000) (applying ripeness doctrine to "protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties," and declining to provide declaratory relief when "challenged agency actions are not final," even where judicial resolution "might aid the parties"). Similarly, Plaintiff's desire to recover attorney's fees, *see* Pl.'s Opp. at 27, is not a basis to obtain declaratory relief; if Plaintiff cannot show an entitlement to a declaratory judgment on the merits, he cannot be entitled to such a judgment solely as a basis to recover fees. *See SecurityPoint Holdings, Inc. v. TSA*, 836 F.3d 32, 36 (D.C. Cir. 2016) ("In determining whether a litigant is a prevailing party [under the Equal Access to Justice Act], we apply a three-part test: (1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial

pronouncement must be accompanied by judicial relief." (internal quotation marks and citation omitted)).

The D.C. Circuit's opinion in *Conservation Force v. Jewell*, 733 F.3d 1200, 1205-06 (D.C. Cir. 2013), cited in Pl.'s Opp. at 27, is in accord. As Defendants have explained, Defs.' Mem. at 13, in that case the D.C. Circuit theorized in dicta that a request for declaratory judgment might be sufficient to overcome the mootness of a § 706(1) claim, but only where the plaintiff alleged a pattern of unreasonable delay and the plaintiff has "standing to bring such a forward-looking challenge[,]" *Conservation Force*, 733 F.3d at 1206. Plaintiff satisfies neither of these criteria. His Amended Complaint does not allege that OFAC has a pattern, practice, or ongoing policy of unreasonably delaying delisting decisions. *See* Am. Compl. ¶¶ 20-30, ECF No. 11. And while his cross-motion and opposition to Defendants' motion for summary judgment assert that "OFAC's pattern of delay, while not *per se* improper, should be considered," Pl.'s Opp. at 24, "[i]t is axiomatic that the Plaintiff cannot amend [his] Complaint by the briefs in support of or in opposition to a motion for summary judgment." *Harrison v. Office of Architect of Capitol*, 68 F. Supp. 3d 174, 178 (D.D.C. 2014), *aff'd*, 793 F.3d 119 (D.C. Cir. 2015). As to standing, Plaintiff may believe that (1) he might one day submit another delisting petition, (2) OFAC will deny his petition, and (3) OFAC will unreasonably delay in reaching its decision; but that potential chain of events "stacks speculation upon hypothetical upon speculation, which does not establish an 'actual or imminent' injury." *N.Y. Reg'l Interconnect, Inc. v. FERC*, 634 F.3d 581, 587 (D.C. Cir. 2011) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

In sum, the declaratory relief requested by Plaintiff would not constitute effective relief in this case because it would be a judicial pronouncement regarding past agency action that has no continuing effect. It would adjudicate no "present right" of the parties and would therefore

amount to no more than an impermissible advisory opinion. *Church of Scientology*, 506 U.S. at

12. Accordingly, Count I is moot.

### 2.    Plaintiff's Claim Is Not Capable Of Repetition Yet Evading Review

Plaintiff attempts to shoehorn his unreasonable delay claim into one of the limited

exceptions to the mootness doctrine, where the challenged conduct is capable of repetition yet

evading review. *See* Pl.'s Opp. at 28-29.[1] That exception does not apply here.

First, to be capable of repetition, there must be "a reasonable expectation that the same

complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S.

147, 149 (1975) (per curiam). To meet this test, the plaintiff must show "not merely a 'physical or

theoretical possibility' of recurrence, but a 'reasonable expectation' if not a 'demonstrated

probability' that [he] will be subject to the same action." *Pub. Utilities Comm'n of Calif. v.

FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001). As noted above, Plaintiff can only speculate about

additional administrative proceedings before OFAC, the outcome of those proceedings, and how

long those proceedings will take. There is therefore no reason to conclude that the agency would

unreasonably delay in evaluating an as-yet unfiled delisting petition.

Second, to evade review, the challenged action must be "in its duration too short to be fully

litigated" to the Supreme Court "prior to its cessation or expiration." *Newdow v. Roberts*, 603

F.3d 1002, 1008 (D.C. Cir. 2010). Although "agency actions of less than two years' duration"

generally "cannot be 'fully litigated' prior to cessation or expiration," that rule of thumb applies

only "so long as the short duration is typical of the challenged action." *Del Monte Fresh Produce

Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009). That is not the case here; indeed,

Plaintiff emphasizes throughout his brief that OFAC's decision-making process exceeded two

---

[1] Plaintiff does not raise an argument based on the voluntary cessation exception to mootness. *See* Pl.'s Opp. at 26-30.

years.  *See* Pl.'s Opp. at 7, 15, 18-20, 23, 29.  Nor has Plaintiff presented evidence of how long it typically takes for OFAC to decide delisting petitions.  *Cf. Grant v. Vilsack*, 892 F. Supp. 2d 252, 257 (D.D.C. 2012).

Additionally, in order to invoke this exception to mootness, "a plaintiff [must] make a full attempt to prevent his case from becoming moot, an obligation that includes filing for preliminary injunctions and appealing denials of preliminary injunctions."  *Newdow*, 603 F.3d at 1009; *see also People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 98 (D.D.C. 2014) (explaining that "a party contesting mootness must use every tool available to it to prevent the case from becoming moot, in order to insure that application of the capable of repetition, yet evading review exception truly is exceptional[,]" and rejecting the argument that a plaintiff need not make such efforts "based . . . on their feeling that they would lose").  Having failed to move for preliminary relief or for expedited consideration of his claims, Plaintiff cannot now argue that Count I has evaded review.  *See Newdow*, 603 F.3d at 1009-10.[2]

Plaintiff's reliance on *Del Monte*, 570 F.3d at 326-27, cited in Pl.'s Opp. at 28, is misplaced.  In that case, the plaintiff challenged OFAC's delay in issuing a one-year export license for agricultural commodities.  *Del Monte*, 570 F.3d at 318-20.  OFAC had established an expedited process whereby the agency would grant the license within nine business days, assuming the application satisfied regulatory requirements and other agencies did not object.  *Id.* at 319-20.  The plaintiff brought suit under § 706(1) after OFAC did not issue the license after more than 100 days after the inter-agency referral, even though no other agency had objected.  *Id.* at 320.  The D.C. Circuit reversed the district court's finding that the case was moot, holding that the claim was capable of repetition yet evading review.  *Id.* at 320-21.  But unlike in *Del Monte*, here

---

[2] Defendants also note that Plaintiff waited to seek delisting until 13 years after his designation, and 6 years after the High Representative lifted the measures on him.  *See* PEJCIC_0005.

there are no regulatory deadlines that govern OFAC's consideration of delisting petitions.  Further,

by Plaintiff's own admission, the time expended by OFAC in deciding such petitions far exceeds

the nine-day window at issue in *Del Monte*.  And whereas in *Del Monte* OFAC announced that it

expected future delays in deciding licensing applications, 570 F.3d at 324, Plaintiff here can point

to no similar assertion by OFAC.

### 3.      OFAC's Decision Was Not Unreasonably Delayed

Even if the Court were to reach the merits of Plaintiff's § 706(1) claim—which it should

not—the Court should conclude that OFAC's decision was not unreasonably delayed based on

application of the *TRAC* factors.  *See Telecommunications Research & Action Center v. FCC*, 750

F.2d 70 (D.C. Cir. 1984) ("*TRAC*").

As to the first factor—whether the court can apply a rule of reason to OFAC's delisting

process—Plaintiff contends that "[a] reasonable time for agency action is usually counted in

weeks or months, not years."  Pl.'s Opp. at 19 (citing *In re Am. Rivers & Ida. Rivers United*, 372

F.3d 413, 419 (D.C. Cir. 2004)).  However, "cases in this Circuit have made clear that measuring

the delay by years alone cannot establish unreasonable delay."  *Liberty Fund, Inc. v. Chao*, 394 F.

Supp. 2d 105, 115 (D.D.C. 2005) (citation omitted); *see also Sault Ste. Marie Tribe of Chippewa*

*Indians v. Bernhardt*, 442 F. Supp. 3d 53, 86 (D.D.C. 2020) (three year delay not unreasonable);

*Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (citing cases where delays of 5-10 years

were not unreasonable).  And the type of highly discretionary decision at issue here—which

involves the gathering of sensitive information from sources around the world, as well as inter-

agency discussions and conclusions regarding national security and foreign affairs—indicates no

rule of reason applies.  *Cf. Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 74

n.28 (D.D.C. 2002) ("Executive Branch decisions to designate an entity as a terrorist are complex

and involve significant political ramifications."), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003).

This case is also quite unlike the out-of-circuit decision in *KindHearts for Charitable Humanitarian Development, Inc. v. Geithner*, 647 F. Supp. 2d 857 (N.D. Ohio 2009), on which Plaintiff relies. *See* Pl.'s Opp. at 19. While the district court in that case stated that "OFAC has engendered a delay of remarkable duration," 647 F. Supp. 2d at 907, the delay at issue concerned not an adjudication of a pending delisting petition, but rather the notice to the U.S.-based charitable organization plaintiff about the reasons for its designation under OFAC's terrorism authorities.

Plaintiff also cannot persuasively rely on decades-old *dicta* from the First Circuit. In *Kokajko v. FERC*, 837 F.2d 524 (1st Cir. 1988), cited in Pl.'s Opp. at 19, the court denied the plaintiff's petition for a writ of mandamus to compel agency action. In doing so, the court noted that "[b]ased on the materials submitted to us, for the most part, there appear to have been relatively few periods of any significant length of unexplained agency inaction during the course of proceedings." *Id.* at 526. Even if the Court were to adopt this analysis in weighing the *TRAC* factors, Plaintiff has failed to demonstrate that OFAC's consideration of his petition involved a "significant length of unexplained action." He seems to believe, based on the access dates of certain documents in the record, that "OFAC conducted no investigation into [his] delisting request until November 20, 2019." Pl.'s Opp. at 19; *see also id.* at 20. Plaintiff is mistaken. *See* Decl. of Ripley Quinby ¶ 11, attached hereto (explaining that "[a]s early as June 2017, OFAC began conducting research regarding Plaintiff in connection with his request for reconsideration").[3] Similarly, Plaintiff claims that "OFAC only first requested information from the State Department on December 2, 2019." Pl.'s Opp. at 19. Not so; while OFAC formally requested State's foreign policy guidance on that date, OFAC was in regular communication with

---

[3] Defendants submit this explanatory declaration to provide further background and context regarding OFAC's decision-making process.

the State Department well before then, including within a month of receiving Plaintiff's delisting

petition.  Quinby Decl. ¶ 9.

Plaintiff next argues that this Court can discern a rule of reason because "[o]ther delisting

procedures take far less time to resolve."  *See* Pl.'s Opp. at 20.  According to Plaintiff, "[t]he most

analogous example is the ISIL (Da'esh) and Al Qaeda sanctions regime that the United Nations

('UN') Office of the Ombudsperson administers."  *Id.*  But Plaintiff offers no basis to conclude

that the time it takes a foreign body to decide a delisting petition in the context of a foreign

proceeding provides a rule of reason to govern OFAC's process, particularly as OFAC's decision-

making is based on different criteria and evidence.  *Cf. Kadi v. Geithner*, 42 F. Supp. 3d 1, 13

(D.D.C. 2012) (courts should be "reluctant to rely on the decisions of other countries based on

information that likely differed from the administrative record compiled by and available to

OFAC," as "these decisions may have been reached under different standards of proof or review,

which further undermines any persuasiveness they would have"); *accord Fulmen Co. v. OFAC*,

No. CV 18-2949 (RJL), 2020 WL 1536341, at *7 (D.D.C. Mar. 31, 2020).

With respect to the second *TRAC* factor, Plaintiff acknowledges that Congress has not

"provided a timetable or other indication of the speed with which it expects the agency to proceed"

in deciding delisting petitions, *TRAC*, 750 F.2d at 80.  *See* Pl.'s Opp. at 21.  The absence of a

statutory deadline is not, as Plaintiff maintains, "a neutral factor in this case[,]"  Pl.'s Opp. at 22,

but instead weighs against a finding of unreasonable delay.  *See Ctr. for Sci. in the Pub. Interest v.*

*FDA*, 74 F. Supp. 3d 295, 301-04 (D.D.C. 2014).

The third and fifth *TRAC* factors, often considered together, concern "the nature and extent

of the interests prejudiced by delay,' with particular concern for matters of 'human health and

welfare,'" as compared to economic regulation.  *Mashpee Wampanoag Tribal Council, Inc. v.*

*Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (quoting *TRAC*, 750 F.2d at 80).  Plaintiff argues

that these factors weigh in favor of a finding of unreasonable delay because "[t]he harm to [him]"—which arises from OFAC maintaining an order blocking his assets—"is not solely economic."  Pl.'s Opp. at 22.  But Plaintiff's claim eviscerates the distinction that the D.C. Circuit has drawn between economic and non-economic regulation; by Plaintiff's reasoning, *any* economic regulation could be construed as threatening human health and welfare.  Nor can Plaintiff persuasively argue that he has been prejudiced by any delay because he anxiously waited for a decision and was "required . . . to engage counsel and pay the $400 filing fee and incur costs for serving the summonses."  *See* Pl.'s Opp. at 24; *see also id.* at 29.  Again, if such expenses were sufficient under *TRAC*, these factors would tilt in favor of every represented litigant, regardless of their individual circumstances or the government action at issue.  Plaintiff cites no authority to support such a broad theory, and Defendants are aware of none.

As to the fourth factor—"the effect of expediting delayed action on agency activities of a higher or competing priority[,]" *TRAC*, 750 F.2d at 80—Plaintiff argues that "[t]he administrative record in this case contains no evidence [his] delisting request was delayed due to the high volume of such requests or activities of a higher priority."  Pl.'s Opp. at 23.  But there is no reason an administrative record would include such information.  The APA provides for courts to review "the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  As a general rule, "review is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).  That includes material that was "directly or indirectly considered by the . . . decisionmaker(s)."  *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 7 (D.D.C. 2006) (citation omitted).  But it does not include "every potentially relevant document existing within [the] agency," *id.*, nor "every scrap of paper that could or might have been created," *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002), *aff'd sub. nom. TOMAC, Taxpayers*

*of Mich. Against Casinos v. Norton*, 433 F.3d 852 (D.C. Cir. 2006). Thus the administrative record related to OFAC's denial of Plaintiff's delisting petition appropriately includes the information directly or indirectly considered in making that decision—not an analysis of competing demands on the agency's resources.

Plaintiff fares no better in claiming that this factor weighs in his favor because "[t]he declaratory judgment sought by the first cause of action would not require OFAC to place Mr. Pejcic's case ahead of other applicants." *See* Pl.'s Opp. at 23. Instead, according to Plaintiff, "it would provide valuable guidance" to the agency. *Id.* Plaintiff's argument—which concedes that a declaratory judgment would have no effect on the parties and is based on a desire for the Court to issue an advisory opinion—only highlights the fact that his claim is moot.[4]

Finally, the sixth *TRAC* factor does not suggest that OFAC's decision was unreasonably delayed. That factor "allows the Court to weigh any alleged impropriety against the other factors in the test." *Beyond Pesticides/Nat'l Coal. Against the Misuse of Pesticides v. Johnson*, 407 F. Supp. 2d 38, 41 (D.D.C. 2005). Plaintiff here does not allege any bad faith or impropriety by OFAC. *See* Pl.'s Opp. at 24-25. Rather, he asserts that OFAC has engaged in a "pattern of delay," which he characterizes as "not *per se* improper." *Id.* at 24. Given Plaintiff's concession that OFAC has not engaged in any impropriety, there is nothing for this Court to weigh against the other factors.

Further, Plaintiff is incorrect that "OFAC has made a practice of delaying its decisions on delisting requests, only to issue such decisions upon the filing of complaints in this Court." *See* Pl.'s Opp. at 24. While it is true that OFAC has on occasion decided delisting petitions after the

---

[4] Plaintiff relies on *In re Public Employees for Envtl. Responsibility*, 957 F.3d 267, 275 (D.C. Cir. 2020), cited in Pl.'s Opp. at 23, but the court in that case did not simply issue a declaratory judgment. That precedent therefore offers no support to Plaintiff.

filing of a lawsuit, *see id.* at 24-25, such limited anecdotal evidence is insufficient to establish an

agency practice.  Indeed, Plaintiff fails to mention that OFAC frequently grants and denies

delisting petitions in the absence of litigation.  *See, e.g.*, Compl., Dkt. No. 1, *Fulmen Co. v. OFAC*,

No. 1:18-cv-2949 (D.D.C. Dec. 14, 2018) (challenging previously issued denial of delisting

petition); OFAC, Kingpin Act Designations, Designations Removals, and Designation Update

(Aug. 25, 2020);[5] OFAC, Venezuela-Related Designations and Designations Removals; Issuance

of Venezuela-Related General License and Frequently Asked Question (June 18, 2020);[6] OFAC,

Syria-Related Designation; Syria Designations Removals; Global Magnitsky Designation

Removal; Foreign Sanctions Evaders Determination Removal (March 17, 2020).[7]

Plaintiff also relies on *Zevallos v. Obama*, 10 F. Supp. 3d 111, 123-24 (D.D.C. 2014),

*aff'd*, 793 F.3d 106 (D.C. Cir. 2015), cited in Pl.'s Opp. at 25, but that case is of no help to him.

In *Zevallos*, the plaintiff submitted a delisting petition in July 2009, which had not been acted

upon by March 2013, when the plaintiff filed suit.  *Id*. at 115-16.  OFAC denied the petition in

June 2013, nearly three months after the complaint was filed and almost four years after the

petition was originally submitted.  *Id*. at 116.  But the court did not find that OFAC unreasonably

delayed its decision.  *See id.* at 123.  Rejecting the plaintiff's § 706(1) challenge, the court

reasoned that "[a]ll this Court can do is compel agency action unreasonably delayed, i.e., compel

OFAC to issue a decision—which it has already done."  *Id*. at 123 (internal ellipsis and quotation

marks omitted); *see also id.* ("Though that is not the result Mr. Zevallos hoped for, it is still a

decision.").  Moreover, Plaintiff misconstrues *Zevallos* in claiming that "[t]he Court noted that the

---

[5] https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20200825.aspx

[6] https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20200618.aspx

[7] https://home.treasury.gov/policy-issues/financial-sanctions/recent-actions/20200317

delay was 'troubling.'"  *See* Pl.'s. Opp. at 25.  As that decision makes clear, the court was troubled

by "three years of radio silence from OFAC[.]"  10 F. Supp. 3d at 130.  Plaintiff here cannot make

a similar claim, especially as his request was fully adjudicated in less than that time.  *See also* Pl.'s

Opp. at 13-14 (noting that OFAC "acknowledged receipt of the request" for delisting within four

days, and that the agency provided a questionnaire to Plaintiff within three months of his request).

Additionally, the presumption of regularity attaches to OFAC's decisions and its

compilation of administrative records, and Plaintiff bears the burden of rebutting that presumption.

*See United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity

supports the official acts of public officers, and, in the absence of clear evidence to the contrary,

courts presume that they have properly discharged their official duties."); *Hercules, Inc. v. EPA*,

598 F.2d 91, 123 (D.C. Cir. 1978) (explaining that "[e]xcept in cases where there is no

accompanying explanation of the reasons underlying an [agency's] decision, . . . [a] strong

presumption of regularity supports the inference that when administrative officials purport to

decide weighty issues within their domain they have conscientiously considered the issues," and

"[t]his presumption can be overcome, and further explication can be required of the

decisionmaker, only upon a strong showing of bad faith or improper behavior." (internal quotation

marks and citations omitted));[8] *Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d

109, 116 (D.D.C. 2014) (discussing "the 'strong presumption' that an agency has properly

compiled the entire record of materials that it considered, either directly or indirectly, in making

its decision").

Plaintiff has failed to carry that burden here.  His insinuation that OFAC is resolving

delisting petitions for reasons not stated in the records is patently insufficient, *see Holy Land*

---

[8] As a corollary to this rule, "it generally is 'not the function of the court to probe the mental
processes' of an agency decisionmaker."  *Hercules*, 598 F.2d at 123 (citation omitted).

*Found.*, 219 F. Supp. 2d at 65-66 (rejecting argument that "OFAC's redesignation of HLF as a terrorist was a 'sham,'" where plaintiff offered only speculation that OFAC considered extra-record evidence and where plaintiff failed to provide factual basis for allegations of bad faith). And to reiterate, the agency's investigations involve more than considering correspondence from designated individuals; rather, to fulfill its mission, OFAC must be able to gather and evaluate additional evidence, determine the consequences of its actions on the national security and foreign policy interests of the United States, and only then be positioned to respond to petitioners seeking delisting. *See Holy Land Found.*, 219 F. Supp. 2d at 74 n.28.  Further, insofar as Plaintiff is complaining that acting on his delisting petition has prevented the Court from reaching the merits of his § 706(1) claim, Plaintiff elides the fact that *he* is responsible for the timing of the filing of the petition, as well as the timing of his lawsuit and his decision to amend his Complaint; Plaintiff could have waited to bring suit against OFAC until after it resolved his pending delisting petition, or he could have attempted to litigate his original Complaint even after OFAC reached its decision.  His decision not to do so cannot give rise to an inference adverse to OFAC.  *See Holy Land Found.*, 333 F.3d at 160 (upholding re-designation decision under the APA, even though OFAC issued that decision after challenge to initial designation); *Zevallos*, 10 F. Supp. 3d at 123-25 (finding § 706(1) claim moot and evaluating merits of subsequently issued agency decision, without indicating that acting on petition was improper).

## B.     OFAC's Denial Of Plaintiff's Delisting Petition Resulted From Reasoned Decision-making

As detailed in Defendants' motion, OFAC reasonably concluded that Plaintiff should remain on the SDN List based on the evidence before the agency.  Defs.' Mem. at 16-21.  This conclusion is entitled to substantial deference.  *E.g.*, *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("[O]ur review—in an area at the intersection of national security,

foreign policy, and administrative law—is extremely deferential." (citations omitted)); *Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150, 155 (D.D.C. 2010) ("[C]ourts owe a substantial measure of 'deference to the political branches in matters of foreign policy,' including cases involving blocking orders" (citation omitted)).

Plaintiff raises two arguments in response.  First, he claims that the circumstances resulting in his designation are no longer applicable.  Pl.'s Opp. at 30-34.  Second, according to Plaintiff, the Court should set aside OFAC's decision because "[h]onoring fallen soldiers does not warrant OFAC sanctions."  *Id.* at 34-37.  Each of these arguments is based on a misunderstanding of OFAC's decision.  And because Plaintiff cannot "show that the 'rationale' behind his original designation 'was never true or is no longer true[,]'" *see Joumaa v. Mnuchin*, 798 F. App'x 667, 668 (D.C. Cir. 2020) (citation omitted), the Court should enter summary judgment in favor of the government with respect to Count II.

> **1.      OFAC Carefully Considered The Evidence Before The Agency And Articulated A Rational Connection Between The Evidence And Its Conclusion**

EO 13219, as amended by EO 13304, permits OFAC to designate persons determined (1) "to have actively obstructed, or pose a significant risk of actively obstructing . . . the Dayton Accords . . ."; or (2) "to have materially assisted in, sponsored, or provided financial, material, or technological support for, or goods or services in support of, such acts of violence or obstructionism or any person listed in or designated pursuant to this order."  EO 13304, § 1(a)(ii)(C)-(D).  In Plaintiff's view, "his designation should be removed now that Karadzic had been arrested, tried, convicted, and sentenced."  Pl.'s Opp. at 31; *see also id.* at 32.  In other words, Plaintiff essentially argues that OFAC cannot rely on the aforementioned provisions of the Executive Order unless it determines that he is engaged in ongoing, sanctionable conduct.  But that interpretation cannot be reconciled with the plain text of the Executive Order, which expressly

contemplates designations based on past conduct, and it is also reasonable that such information would inform how OFAC determines to take action with respect to any designation. *See* EO 13671, § 1(a)(ii)(C)-(D) (allowing designation of persons who "have" engaged in certain actions).

Plaintiff is also incorrect in arguing that "OFAC never explained why the facts that led to Mr. Pejcic's designation in 2004 supported his continued designation in 2019 in light of Karadzic's arrest." *See* Pl.'s Opp. at 32. To the contrary, OFAC's letter to Plaintiff's counsel and its denial memorandum explain why Plaintiff has not established that his removal from the SDN List is warranted.[9] First, Plaintiff failed to demonstrate that he did not provide material assistance to Karadzic, or that he did not actively obstruct or pose a risk of obstructing the Dayton Accords, *see* PEJCIC_0001, PEJCIC_0008-09 (noting the High Representative's imposition of sanctions and removal of Plaintiff from public office due to his support for Karadzic and obstruction of the peace process, and Plaintiff's arrest by the NATO Stabilization Forces for allegedly engaging in activities contrary to the Dayton Accords, including providing support to Karadzic); *id.* at PEJCIC__0010 (noting that Plaintiff was among a small group of core Karadzic supporters during a 13-year manhunt for him); *see also id.* at PEJCIC_0120_002 ("PEJCIC was responsible for the security of KARADZIC during the war. . . . PEJCIC is the key person in BIJELJINA pulling strings in order to protect KARADZIC[.]"). Further, and based on foreign policy guidance from the State Department, OFAC concluded that Plaintiff continues to "pose a significant risk of active obstruction[.]" PEJCIC_0010; *see also* PEJCIC__0123_001-04. This risk is far from speculative, given evidence that Plaintiff (1) "has failed to distance himself from the legacy of wartime Serbian

---

[9] The evidence discussed below is based on the unclassified administrative record. OFAC respectfully refers the Court to pages PEJCIC_0013-14 of the record and the classified exhibits cited therein (Exhibits 20-21) as well as pages PEJCIC_0105-06 and the classified exhibits cited therein (Exhibits E-O) for a description of the classified information considered by OFAC for both the 2004 designation and the 2019 denial of the delisting petition.

Democratic Party (SDS) leaders and continues to lionize them and members of the Janja Detachment in which he served"; and (2) serves as a leader of an organization in Bijeljina that "annually celebrates the Day of Defense of the City, promoting an alternative narrative regarding the Serb takeover of the city in late March – early April 1992," where such alternative narratives "risk a resurgence that undermines the international community's work to advance the rule of law in Bosnia and Herzegovina."  PEJCIC_0010 (citing PEJCIC_0123_003); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2422 (2018) ("[T]he Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving 'sensitive and weighty interests of national security and foreign affairs.'" (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010))).  Thus, regardless of whether Karadzic "c[an] no longer evade arrest," *see* Pl.'s Opp. at 32, the record amply supports OFAC's conclusion that Plaintiff still meets the criteria for designation, namely that he materially assisted in, or provided financial or material support for Karadzic, and that he actively obstructed or poses a risk of actively obstructing the Dayton Accords.  *See* PEJCIC_0007.

Similarly, Plaintiff asserts that "OFAC[] fail[ed] to engage with [his] non-frivolous argument" that his designation was no longer warranted in light of Karadzic's arrest.  *See* Pl.'s Opp. at 32.  But Plaintiff concedes that "[t]he denial memorandum shows that OFAC was well aware that this was Mr. Pejcic's principal contention."  *Id.* at 31.  As stated therein, OFAC acknowledged Plaintiff's argument that "[Karadzic's] case is now over, and there is no reason why the sanctions on [Plaintiff] should not now be removed."  PEJCIC_0005.  Nevertheless, after "carefully considering the information and arguments submitted by" Plaintiff and other information available to the agency—including that described above—OFAC determined that Plaintiff's designation was still warranted.  PEJCIC_0006.  Thus OFAC has articulated a "rational connection between the facts found and the choice made[,]" in accordance with the APA's

requirements. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) (citation omitted); *see also id.* ("We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."); *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) ("[A]n agency's decision [need not] be a model of analytic precision to survive a challenge.").

The cases cited by Plaintiff, *see* Pl.'s Opp. at 32-33, do not bolster his argument. For instance, in *Cooper v. United States*, 285 F. Supp. 3d 210, 216 (D.D.C. 2018), cited in Pl.'s Opp. at 32, the court held that an agency violated the APA because it "did not acknowledge the authorities cited by Plaintiff, and the court cannot discern on what basis the Board rejected his argument[.]" By contrast, here OFAC has acknowledged Plaintiff's argument, PEJCIC_0005, and the basis for its denial decision is presented in its memorandum, namely that Plaintiff "continues to meet the criteria for designation pursuant to the Order and has not demonstrated that the circumstances resulting in the designation no longer apply." PEJCIC_0012.

Plaintiff also appears to rely on *Zevallos*, 10 F. Supp. 3d at 122, and *Joumaa v. Mnuchin*, No. CV 17-2780 (TJK), 2019 WL 1559453 (D.D.C. Apr. 20, 2019), cited in Pl.'s Opp. at 32, for the proposition that OFAC must identify ongoing, sanctionable conduct to maintain his designation.[10] Neither case so held; and in any event, the evidence relied on by OFAC indicates that Plaintiff continues to engage in troubling conduct that poses a significant risk of obstructing the Dayton Accords. PEJCIC_0009-10; PEJCIC_0123_003-04.

---

[10] Both of those cases involved designations under the Foreign Narcotics Kingpin Designation Act, which authorizes designation based on, *inter alia*, "materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker"; or "acting for or on behalf of[] a significant foreign narcotics trafficker[.]" 21 U.S.C. § 1904(b)(2)-(3).

Also inapposite is *Epsilon Electronics, Inc. v. U.S. Department of the Treasury*, 857 F.3d 913, 928 (D.C. Cir. 2017), cited in Pl.'s Opp. at 33.  In that case, the Circuit Court faulted OFAC, in assessing a monetary penalty, for not adequately explaining how it treated particular evidence that was susceptible to multiple inferences.  *Epsilon Elecs.*, 857 F.3d at 928.  Plaintiff's situation is not remotely analogous; the agency has accepted as true the information regarding Karadzic's arrest, and the denial memorandum explains that Plaintiff's designation is not contingent upon that fact.  PEJCIC_0005-06.  Additionally, *DHS v. Regents of the University of California*, 140 S. Ct. 1891 (2020), cited in Pl.'s Opp. at 33, is even further removed from the facts of this case.  In *Regents*, the Supreme Court held that the agency failed to consider a particular option and thus failed to abide by the APA's requirements.  *Id.* at 1913.  Here, on the other hand, OFAC plainly considered both options presented—to grant or deny Plaintiff's petition—as well as information about Karadzic's arrest, the removal of sanctions by the High Representative, and other evidence available to the agency.  PEJCIC_0005-06; *see also supra* at 10 (explaining that OFAC may maintain sanctions regardless of a foreign body's decision as to a particular SDN).

Finally, Plaintiff relies on this Court's decision in *Cigar Association of America v. FDA*, 436 F. Supp. 3d 70, 89 (D.D.C. 2020), cited in Pl.'s Opp. at 34.  *Cigar Association of America* involved a challenge to an agency rulemaking, where "the agency asked for comments not only on whether to regulate premium cigars at all but whether the various types of regulation set forth in the Proposed Deeming Rule were appropriate for particular products."  *Id.*  This Court ordered remand because the agency failed to "explain not only why it decided to deem premium cigars— i.e., why it selected Option 1 over Option 2—but also why the health warnings regime was appropriate for the distinct category of premium cigars products."  *Id.*  By contrast, OFAC carefully considered all the information submitted by Plaintiff to support his delisting petition, as well as other information available to the agency, and reasonably decided to deny Plaintiff's

request.  PEJCIC_0006-12; PEJCIC_0030-33.  Because an agency "need only state the main reasons for its decision and indicate that it has considered the most important objections[,]" OFAC has satisfied its obligations under the APA.  *See Simpson v. Young*, 854 F.2d 1429, 1435 (D.C. Cir. 1988).

### 2.  OFAC Appropriately Considered Information About Plaintiff's Recent Conduct

Equally unavailing are Plaintiff's arguments that OFAC cannot rely on information about his failure to distance himself from the legacy of wartime SDS leaders, as well as his promotion of an alternative narrative about the Serb takeover of Bijeljina.  *See* Pl.'s Opp. at 34-37.  First, according to Plaintiff, OFAC improperly considered this information because it is "unrelated to the reasons for the listing."  *Id.* at 35.  But OFAC designated Plaintiff in part because he "actively obstructed, or . . . posed a significant risk of actively obstructing, the . . . Dayton Accords[,]" PEJCIC_0006; *see also* EO 13304, § 1(a)(ii)(C), and the State Department concluded that Pejcic's post-designation conduct poses a significant risk of active obstruction of the Dayton Accords.  PEJCIC_0123_003-04.  Thus this information is plainly related to the reasons for the initial designation.

Also incorrect is Plaintiff's assertion that OFAC cannot rely on this information because it "has nothing to do with assisting Karadzic to evade arrest."  *Id.* at 35.  Here, he conflates the criteria for designation with the evidence that supports the agency's determination that the criteria are met.  That is, OFAC designated Plaintiff for materially assisting, or providing financial or material support for, Karadzic, and for actively obstructing or posing a risk of actively obstructing the Dayton Accords.  PEJCIC_0006.  Evidence about Plaintiff's specific assistance to Karadzic demonstrates that OFAC's decision to designate Plaintiff was reasonable, and it provides important context for OFAC to evaluate his delisting petition.  *Cf. Joumaa*, 2019 WL 1559453, at

21

*8.  But it does not define the universe of evidence that OFAC may consider.  Moreover, Plaintiff's interpretation is antithetical to the purpose of both EO 13304 and IEEPA, and would unduly constrain the Executive Branch in matters of national security and foreign policy.  *See, e.g.*, *Dames & Moore v. Regan*, 453 U.S. 654, 673 (1981) ("[Blocking] orders permit the President to maintain the foreign assets at his disposal for use in negotiating the resolution of a declared national emergency," and "[t]he frozen assets serve as a 'bargaining chip' to be used by the President when dealing with a hostile country."); *United States v. McKeeve*, 131 F.3d 1, 10 (1st Cir. 1997) (discussing the President's "broad and flexible power" under IEEPA).

Plaintiff next claims that his "remarks at memorial services for fallen soldiers or leadership in a veterans organisation [*sic*] do not constitute an independent basis for imposing sanctions on him."  Pl.'s Opp. at 35.  OFAC, however, never claimed as much.  Rather, OFAC relied on the State Department's assessment that such post-designation activities pose a significant risk of actively obstructing the Dayton Accords.  PEJCIC_0009-10; PEJCIC_0123_003-04.  While Plaintiff may disagree with that assessment, his personal views on this point do not undermine OFAC's decision.  *See Zevallos*, 793 F.3d at 114 ("[W]e agree that much of this evidence could be viewed in a light more beneficial to Zevallos.  However, when we evaluate agency action, we do not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision."  (citation omitted)); *see also Islamic Am. Relief Agency*, 477 F.3d at 734 (noting heightened deference in review of actions that lie "at the intersection of national security, foreign policy, and administrative law," and that court's review of such orders "is extremely deferential").  Nor is it relevant whether OFAC has previously "sanctioned anyone in Bosnia, or anywhere in the world, for such conduct."  *See* Pl.'s Opp. at 35.  OFAC's designation decisions are made on a case-by-case basis, with a view toward promoting the national security and foreign policy interests of the United States; given the wide range of

illicit behavior in which SDNs engage, it is unremarkable that OFAC's designation decisions do not all fit neatly into specific molds.

Plaintiff next complains that "OFAC never gave [him] the opportunity to provide information about these allegations." Pl.'s Opp. at 36. But this argument is not properly before the Court, as Plaintiff's Amended Complaint does not challenge the notice provided by OFAC, and Plaintiff cannot further amend his pleadings in his response to Defendants' motion. *See Harrison*, 68 F. Supp. 3d at 178. And in any event, having described to the extent possible the factual findings on which it relied, OFAC has provided Plaintiff "with sufficient information regarding the 'basis' for his designation such that he may meaningfully participate in the reconsideration process." *See Rakhimov v. Gacki*, No. CV 19-2554 (JEB), 2020 WL 1911561, at *7 (D.D.C. Apr. 20, 2020), *appeal dismissed*, No. 20-5121, 2020 WL 4107145 (D.C. Cir. July 1, 2020). If Plaintiff wishes to provide additional information about these events, he is free to do so through the administrative process. *See id.* (rejecting claim that OFAC failed to provide adequate notice of the basis for its designation decision, and emphasizing that the plaintiff can continue to submit information to the agency).

Plaintiff then takes aim at OFAC's decision-making process itself, but that argument misses its mark. For instance, he again asserts that "OFAC only requested information on [his] delisting request from the State Department on December 2, 2019[,]" and that "[i]ts inclusion in the denial memorandum looks like an afterthought[.]" Pl.'s Opp. at 36. That assertion is simply incorrect, *see* Quinby Decl. ¶¶ 9, 11, and is also insufficient to rebut the presumption of regularity that attaches to OFAC's decision, *see supra* at 14. Similarly, Plaintiff's claim that the "timing" associated with OFAC's decision "indicates a lack of reasoned decision making on the part of OFAC," Pl.'s Opp. at 36, finds no basis in fact or law. To the contrary, this theory—unsupported by a single citation to binding or persuasive authority—is untethered from the central question of

whether the administrative record supports the agency's decision.  It also overlooks the fact that Plaintiff is not privy to the inner workings of OFAC's decision-making process, as it is well-established that materials protected by the deliberative process privilege and attorney work-product privilege are appropriately excluded from the administrative record.  *See, e.g.*, *Stand Up for California!*, 71 F. Supp. 3d at 122.  Thus merely because the Director of OFAC approved the denial decision on a particular day does not imply that she was not briefed on OFAC's analysis or recommendations beforehand, or that OFAC reached its decision "in unreasonable haste[,]" *see* Pl.'s Opp. at 36.  To the contrary, "[d]uring the evaluation process, OGT briefed OFAC's Director on the status of the investigation on multiple occasions."  Quinby Decl. ¶ 11.

Plaintiff concludes by asserting that he "was prejudiced" by OFAC's reliance on this post-designation information "because these allegations are untrue."  Pl.'s Opp. at 37.  As discussed above, however, Plaintiff's disagreement with OFAC's factual findings does not provide a basis to seek relief under the APA.  *See supra* at 22.  And to reiterate, if Plaintiff disagrees with OFAC's findings or wishes to provide additional information, he may submit another delisting request to the agency.  *See* 31 C.F.R. § 501.807.

Moreover, Plaintiff cannot establish that, even if OFAC erred in its analysis of some of the evidence before it—which is not the case—such error was prejudicial.  *See* 5 U.S.C. § 706 (requiring courts reviewing agency action to take "due account . . . of the rule of prejudicial error").  Given the totality of evidence before the agency, any such error would be harmless and therefore insufficient to warrant the relief sought by Plaintiff.  *See Zevallos*, 793 F.3d at 114.  Accordingly, there is no basis to conclude that OFAC's decision was arbitrary, capricious, or an abuse of discretion under 5 U.S.C. § 706(2)(A).

### C.     The Relief Sought By Plaintiff Is Improper

Finally, Defendants explained in their motion that even if Plaintiff were able to succeed on his arbitrary and capricious claim (which he cannot), he would not be entitled to an order removing him from the SDN List, as he requests, Am. Compl. ¶ 26.  *See* Defs.' Mem. at 20-21. Rather, remand is the appropriate remedy in an APA case such as this one.  *See, e,g.*, *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012); *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005).

In response, Plaintiff contends that the Court should nonetheless order his removal from the SDN List because "the remedy of remand . . . would prejudice the interest of the injured parties."  *See* Pl.'s Opp. at 38 (citing *Am. Waterways Operator v. Wheeler*, 427 F. Supp. 3d 95, 100 (D.D.C. 2019)).  But in *American Waterways Operator*, the agency itself sought remand so that it could consider certain cost-related information.  427 F. Supp. 3d at 97.  Needless to say, OFAC does not seek similar relief here.  Further, in *American Waterways Operator*, this Court denied the agency's request in light of the prejudice to intervenors who undertook significant environmental measures, and because "remand also will leave regulated parties uncertain as to their compliance obligations."  *Id.* at 99-100.  No similar interests are at stake here.  Thus remand is the only appropriate remedy, particularly as Plaintiff does not challenge the basis for OFAC's 2004 designation decision.  *See* Pl.'s Opp. at 13.

### CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion, deny Plaintiff's cross-motion, and enter judgment in favor of Defendants.

Dated:  September 17, 2020                              Respectfully submitted,

                                                        JEFFREY BOSSERT CLARK
                                                        Acting Assistant Attorney General

DIANE KELLEHER
Assistant Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel:  (415) 436-6635
Fax:  (415) 436-6632
E-mail:  stuart.j.robinson@usdoj.gov